William J. Genego (SBN 103224)
Nasatir, Hirsch, Podberesky & Genego
2115 Main Street
Santa Monica, California 90405
Telephone:  (310) 399-3259
Fax:   (310) 392-8260
Email: wgenego@gmail.com

Michael Rubin (SBN 80618)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone:  (415) 421-7151
Fax:   (415) 362-8064
Email: mrubin@altber.com

Attorneys for Petitioner Stephen P. Shoemaker

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN P. SHOEMAKER,<br><br>          Petitioner,<br><br>v.<br><br>ROBERT TAYLOR, in his official capacity as Chief Probation Officer for the City and County of Los Angeles,<br><br>          Respondent. | Case No. 07-05849 MMM (RZ)<br><br>**PETITIONER'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF OBJECTIONS TO SUPPLEMENTAL REPORT OF MAGISTRATE JUDGE**<br><br>**Oral Argument Requested** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1

# TABLE OF AUTHORITIES

2

## CASES

3   *Aceves v. Allstate Ins. Co.,*
4       68 F.3d 1160 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    *Ashcroft v. Free Speech Coalition,*
5       535 U.S. 234 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

6   *Emery v. Clark,*
7       ___ F.3d ___ 2011 WL 2090827 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    *New York v. Ferber,* 458 U.S. 747 (1982) . . . . . . . . . . . . . . . . . . . . . *passim*
8
    *People v. Gerber,*
9       ___ Cal.App.4th ___ (Sixth App. Div. June 8, 2011) . . . . . . . . . . . . . . . *passim*

10

## STATUTES AND REGULATIONS

11   28 U.S.C. §2254 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

12   California Penal Code
         §290 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
13       §311.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10
         §311.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
14       §311.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Pending before this Court are petitioner Stephen P. Shoemaker's objections to Magistrate Judge Zarefsky's October 29, 2009 Supplemental Report and Recommendations (Dkt. #46), in which the Magistrate Judge recommends denial of Mr. Shoemaker's habeas challenge to his convictions for eight counts of possession of child pornography (in violation of Penal Code §311.11(a)) and one count of duplication of child pornography (in violation of Penal Code §311.3(a)). *See* Petitioner's Objections to Supplemental Report (Dkt. #51).

Mr. Shoemaker hereby submits as supplemental authority in support of his petition and objections the California Court of Appeal's recent opinion in *People v. Gerber*, __ Cal.App.4th __ (Sixth App. Div. June 8, 2011), attached hereto as Exhibit A.

In the first part of its published opinion in *Gerber*, the Court of Appeal holds that California's statutory prohibition against possessing child pornography, Cal. Penal Code §311.11, cannot be applied to "morphed" or doctored images in which an image of a real child's head is added to, or superimposed upon, an image of someone else's body. *See* Ex. A at 9-21. The Court of Appeal reaches this result both as a matter of statutory construction and as necessary to avoid an unconstitutional application of Penal Code §311.11 in violation of the U.S. Supreme Court's decisions in *New York v. Ferber*, 458 U.S. 747 (1982), and *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). *See* Ex. A at 16-21.

The *Gerber* decision is relevant here because two of the images that Mr. Shoemaker was convicted of unlawfully possessing under Penal Code §311.11 were likewise morphed, as respondent concedes, and one of those morphed images could have been the basis of the jury's duplication verdict under Penal Code §311.3. *See* Petition at 11-12, 27-28; Petitioner's Objections to Supplemental Report (Dkt. #51) at 15-18; *see also* Petitioner's Objections to Report and Recommendation (Dkt. #42) at 8-13; Respondent's Answer to Petition for Writ of

1  Habeas Corpus (Dkt. #25) at 5, 11 (conceding that those two images were

2  morphed digital composites).[1]

3        The California Court of Appeal's interpretation of Penal Code §311.11 to

4  exclude morphed images must be given deference, even if it is not technically

5  controlling. *Cf. Emery v. Clark*, ___ F.3d ___ (9th Cir. May 27, 2011), 2011 WL

6  2090827 at *3-*4 (California Supreme Court's interpretation of Penal Code

7  provision effectively overrules Ninth Circuit's prior contrary interpretation for

8  purposes of AEDPA habeas review); *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160,

9  1164 (9th Cir. 1995) (deferring to California Court of Appeal's analysis of state

10  insurance law, where California Supreme Court has only addressed issue in dicta).

11  Even apart from the *Gerber* court's construction of Penal Code §311.11, however,

12  that case confirms that the First Amendment does not permit a state to criminalize

13  as "child pornography" the possession or duplication of non-obscene images that

14  were morphed and do not depict an actual child personally engaged in sexual

15  conduct – because any such application of Penal Code §311.11 would be contrary

16  to the U.S. Supreme Court's First Amendment analysis in *Ferber* and *Free Speech*

17  *Coalition.*

18        For the reasons set forth below and in petitioner's prior briefs, the City of

19  Redondo Beach's misdemeanor conviction of Mr. Shoemaker for possessing two

20  morphed images (and duplicating one of them) where those morphed images do

21  not depict an actual child engaged in the sexual conduct or simulated sexual

22  conduct, requires reversal of his entire conviction under the applicable standards

23

24

25

26

27        [1]  The eight possession counts (counts 5, 9, 12, 13, 14, 17, 22 and 23) were
each based on a single image (exhibits 3, 5, 7, 8, 9, 12, 13 and 14).  Two of those

28  possession counts (count 13 and count 23) were based on morphed images
(exhibit 8 and exhibit 14).  The duplication count (count 24) allowed the jury to
convict based on the duplication of either exhibit 13 or morphed exhibit 14.

1    of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28

2    U.S.C. §2254 *et seq.*[2]

3                              **ARGUMENT**

4         Currently pending before this Court are Mr. Shoemaker's September 7,

5    2007 Petition for Writ of Habeas Corpus (Dkt. #1) and supporting Memorandum

6    and Exhibits in Support of Petition for Writ of Habeas Corpus (Dkt. #4-5), in

7    which he advances several reasons under AEDPA why his state law convictions

8    for possession and duplication of child pornography must be reversed; Magistrate

9    Judge Zarefsky's Report and Recommendations (Dkt. #39) and Supplemental

10   Report (Dkt. #46), which recommend that the Court deny Mr. Shoemaker's

11   Petition; and Petitioner's Objections to Report and Recommendations (Dkt. #42)

12   and Petitioner's Objections to Supplemental Report (Dkt. # 51), which

13   demonstrate why, under the governing First Amendment and AEDPA standards,

14   petitioner's state court conviction must be found to have been "contrary to, or

15   involved an unreasonable application of, clearly established Federal law, as

16   determined by the Supreme Court of the United States." 28 U.S.C. §2254(d).[3]

17        Petitioner has presented several independent reasons why habeas relief is

18   required under the applicable facts and governing law.  If this Court agrees with

19   his analysis as to any of those arguments, the proper remedy is to reverse Mr.

20   Shoemaker's misdemeanor convictions in their entirety and either issue a

21   judgment of acquittal or remand for a new trial under the correct legal standards

22   with regard to whichever images could potentially support a conviction under the

23   _____

24        [2] Because of the improper "context" instruction given to the jurors, each

25   of the possession counts must be vacated if *any* of them is held to be
     constitutionally infirm – because whether or not that "context" instruction is

26   found unconstitutional, reversal as to any single image necessarily changes the
     context in which the jury was directed to consider those images. *See infra*, n.4.

27

28        [3] *See also* Respondent's Answer (Dkt. #25); Petitioner's Traverse (Dkt.
     #30); Respondent's Reply to Petitioner's Objections (Dkt. #44); and Petitioner's
     Surreply in Support of Objections (Dkt. # 45).

1  proper standards. *See* Petitioner's Objections to Report and Recommendations
2  (Dkt. #42) at 5.[4]

3      The Court of Appeal in *Gerber* based its analysis on the language and
4  legislative purposes of Penal Code §311.11(a), which requires the State to prove
5  beyond a reasonable doubt that defendant "knowingly possesses or controls any
6  matter or . . . image, . . . the production of which involves the use of a person
7  under the age of 18 years, knowing that the matter depicts a person under the age
8  of 18 *personally* engaging in or simulating sexual conduct." . . . . (Emphasis
9  added). Although the Court of Appeal principally focused on the statutory
10  language and the Legislature's intent, it also analyzed the applicable constitutional
11  principles established by the U.S. Supreme Court's First Amendment child
12  pornography cases, explaining that it was appropriately construing §311.11 to
13  avoid "constitutional infirmities" because any construction of the California child
14  pornography law to encompass morphed images would be contrary to *Ferber*, 458
15  U.S. 747, and *Free Speech Coalition*, 535 U.S. 234, *see Gerber*, Slip Op. at 16-21
16  – which is precisely what petitioner contends in his petition for writ of habeas
17  corpus. *See, e.g.,* Petition (Dkt. #1) at 2-3, 22-25, 49-53; Petitioner's Objections
18  to Report and Recommendations (Dkt. #42) at 6-13; Petitioner's Surreply in
19  Support of Objections (Dkt. #45) at 7-8; Petitioner's Objections to Supp. Report
20  (Dkt. #51) at 4, 15-19.

21      The images in *Gerber* were comprised of photographs of defendant's
22  daughter's head superimposed on someone else's body. Ex. A at 8, 21. The main
23  question before the Court of Appeal was therefore whether Penal Code §311.11

24

25  [4] A properly instructed jury would have to be informed, for example, that
    in determining whether an image constitutes actionable child pornography, it
26  must consider only the content of the image itself and not the "context" in which
    the prosecutor chooses to present the image (as supposedly bearing on
27  defendant's improper thought processes), and that morphed images are not
    actionable if the minor subject is not personally engaged in actual or simulated
28  sexual conduct. *See* Petition at 4-6, 12-13, 49-50; Petitioner's Objections to
    Supp. Report (Dkt. #51) at 3-4, 6-13.

1   applied to morphed images where the person depicted was *not* the person actually

2   engaged in sexual conduct, given the statutory language requiring proof that

3   defendant knowingly possessed an image that "depicts a person under the age of

4   18 years *personally* engaging in or simulating sexual conduct, as defined in

5   subdivision (d) of Section 311.4." (Emphasis added).[5]

6          The Court of Appeal rested its holding on its conclusion that the statutory

7   term "personally" must have independent meaning in the context of §311.11 and

8   not be superfluous, and that the statute must be read as a whole in light of the

9   Legislature's stated purpose of preventing the actual exploitation of actual minor

10  children. Ex. A at 10-16. The Court also relied on *Ferber* and *Free Speech*

11  *Coalition*, which establish that the First Amendment only permits states to

12  criminalize the possession of non-obscene images of children if those images

13  depict a real child engaged personally in sexual conduct. *Id.* at 16-21.

14         As the Court of Appeal wrote:

15

16  _____

17         [5] For several reasons, the defendant in *Gerber* was actually closer to

18  crossing the First Amendment line into child pornography than Mr. Shoemaker,
    because unlike Mr. Gerber (who took the photos and superimposed them

19  himself), Stephen Shoemaker did not create, alter, or manipulate any part of the
    morphed photos he was convicted of possessing, did not abuse any minor in any

20  way (because Mr. Shoemaker was merely found to have shared control over a
    computer on which the morphed images were located, *see* Petition at 24 & n.10,

21  unlike Mr. Gerber who engaged in a variety of sordid – and some illegal –

22  conduct with respect to his daughter), and did not cause the minor whose head
    was depicted to be publicly identified (unlike Mr. Gerber, whose daughter has

23  been identified as the person whose photographs he superimposed on others'
    bodies). As the record demonstrates, Mr. Shoemaker's conviction was solely

24  based on allegations that he privately duplicated two images – one of which was
    morphed – and privately possessed eight disputed images – two of which were

25  morphed and six of which the Magistrate Judge concluded *could* have been

26  found by a reasonable juror *not* to be child pornography. *See* Report and
    Recommendations (Dkt. #39) at 23-24; at 6 ("[T]he Court could not say then,

27  and still cannot say, that the jury's factual determination that the pictures were
    pornographic was objectively unreasonable. Perhaps, sitting as a juror, the Court

28  might vote otherwise; perhaps not."); Petitioner's Objections to Report and
    Recommendations (Dkt. #42) at 12 & n.4, 15, 17-18 n.7.

1    Any lingering doubts that "personally" requires a real child to
2    have actually engaged in or simulated the sexual conduct depicted are
3    erased by the established rule of statutory construction that "requires
4    us to construe statutes to avoid 'constitutional infirmit[ies].'
5    [Citations.]" (*Myers v. Philip Morris Companies, Inc.* (2002) 28
6    Cal.4th 828, 846-847.) . . . As indicated, the term "child
7    pornography" has a particular meaning under United States Supreme
8    Court decisions.

9    [T]he Supreme Court in *Ferber* made clear that there were "limits
10   on the category of child pornography which, like obscenity, is
11   unprotected by the First Amendment." (*Id.* at p. 764.) It stated that
12   "the distribution of descriptions or other depictions of sexual conduct,
13   not otherwise obscene, which do not involve *live* performance or
14   photographic or other visual reproduction of *live* performances,
15   retains First Amendment protection." (*Id.* at pp. 764-765, italics
16   added.) . . .

17   In *Free Speech Coalition, supra*, 535 U.S. at pages 257-258, the
18   United States Supreme Court struck down provisions of The Child
19   Pornography Prevention Act of 1996 (CPPA). The CPPA
20   "extend[ed] the federal prohibition against child pornography to
21   sexually explicit images that appear to depict minors but were
22   produced without using any real children." (*Id.* at p. 239.) "The
23   statute prohibit[ed], in specific circumstances, possessing or
24   distributing these images, which may be created by using adults who
25   look like minors or by using computer imaging. The new technology,
26   according to Congress, makes it possible to create realistic images of
27   children who do not exist." (*Id.* at pp. 239-240.)
28

1    In refusing to extend *Ferber* and *Osborne* to "virtual child

2    pornography," the Supreme Court in *Free Speech Coalition*

3    emphasized that the "CPPA prohibits speech that records no crime

4    and creates no victims by its production." (*Free Speech Coalition*,

5    *supra*, 535 U.S. at p. 250; see *U.S. v. Williams*, *supra*, 553 U.S. at p.

6    289 [provision held invalid in *Free Speech Coalition* because "the

7    child-protection rationale for speech restriction does not apply to

8    materials produced without children"].)  The court emphasized that

9    "*Ferber's* judgment about child pornography was based upon how it

10   was made, not on what it communicated" and *Ferber* "reaffirmed that

11   where the speech is neither obscene nor the product of sexual abuse,

12   it does not fall outside the protection of the First Amendment.

13   [Citations.]" (*Id.* at pp. 250-251.)

14        In *Free Speech Coalition*, the Supreme Court found it significant

15   that *Ferber* had "recognized some works in this [child pornography]

16   category might have significant value [citation], but relied on virtual

17   images – the very images prohibited by the CPPA – as an alternative

18   and permissible means of expression: '[I]f it were necessary for

19   literary or artistic value, a person over the statutory age who perhaps

20   looked younger could be utilized.  Simulation outside of the

21   prohibition of the statute could provide another alternative." *Id.,* at

22   763, 102 S.Ct. 3348." (*Id.* at p. 251.)  It stressed that "*Ferber,* then,

23   not only referred to the distinction between actual and virtual child

24   pornography, it relied on it as a reason supporting its holding."

25   (*Ibid.*)

26        The Supreme Court rejected the government's arguments that (1)

27   "CPPA is necessary because pedophiles may use virtual child

28   pornography to seduce children" (*ibid.*), (2) the act's "objective of

1   eliminating the market for pornography produced using real children

2   necessitates a prohibition on virtual images as well" because virtual

3   images are "indistinguishable from real ones" (*id.* at p. 254), and (3)

4   child pornography prosecutions will be very difficult unless both

5   virtual and actual images are prohibited because it will be hard to

6   establish that an image is of an actual child (*ibid.*).  The court

7   concluded that none of those arguments justified criminalizing the

8   protected speech of "virtual child pornography" and held that two

9   provisions of the federal CPPA were unconstitutionally overbroad.

10   (*Id.* at pp. 256-258.)

11        The Supreme Court made clear that the state's interest in

12   protecting children that justifies restricting free speech is inapplicable

13   to materials produced without children.  (*Id.* at pp. 250-251, 254.)  It

14   explained: "Virtual child pornography is not 'intrinsically related' to

15   the sexual abuse of children, as were the materials in *Ferber*.  458

16   U.S., at 759, 102 S.Ct. 3348.  While the Government asserts that the

17   images can lead to actual instances of child abuse, see *infra*, at 1402-

18   1404, the causal link is contingent and indirect."  (*Id.* at p. 250.)  It

19   stated that "[i]n the case of the material covered by *Ferber*, the

20   creation of the speech is itself the crime of child abuse . . . ."  (*Id.* at p.

21   254.)

22        In *Free Speech Coalition*, the United States Supreme Court had no

23   occasion to decide whether possession of adult pornography edited by

24   superimposing an actual child's head on an adult body is protected by

25   the First Amendment.  In that case, there was "no underlying crime at

26   all" and it did not need to "consider where to strike the balance . . . ."

27   (*Free Speech Coalition, supra*, 535 U.S. at p. 254.)  *We conclude,*

28   *however, that the articulated rationales underlying both the Ferber*

1    *and Free Speech Coalition decisions compel the conclusion that such*
2    *altered materials are closer to virtual child pornography than to real*
3    *child pornography since the use of photo editing software to replace*
4    *an adult's head with a child's head on pornographic images of the*
5    *adult does not necessarily involve sexual exploitation of an actual*
6    *child. Although we may find such altered images morally repugnant,*
7    *we conclude that mere possession of them remains protected by the*
8    *First Amendment to the United States Constitution.* Therefore, to
9    avoid constitutional infirmity, the term "personally" in section 311.11
10   must be construed to mean that a real child actually engaged in or
11   simulated the sexual conduct depicted, which is a reasonable
12   interpretation given the legislative history.
13   Ex. A at 16-21 (emphasis added).
14       This analysis closely tracks petitioner's showing that his conviction for
15   possessing the morphed images was "contrary to . . . clearly established Federal
16   law" which establishes that a conviction for private possession or duplication of
17   child pornography cannot rest upon images whose sexual content was added after
18   the fact – especially in a case like Mr. Shoemaker's, where there is no evidence or
19   indication that the minor was psychologically or physically abused in any way
20   when the original photograph of the minor's head was taken. *Cf.* Petitioner's
21   Objections to Report and Recommendations (Dkt. #42) at 12 n.4 (pointing out that
22   under the prosecutor's theory, a person could be convicted of possessing child
23   pornography and subjected to mandatory sex registration for nothing more than
24   cutting and pasting a photograph of a young person's face from a newspaper or
25   magazine onto another photograph depicting some other person's *non*-obscene
26   sexual conduct).
27       The *Gerber* decision addresses only one of several grounds requiring
28   reversal of Mr. Shoemaker's unconstitutional conviction. The fact that the

1  Supreme Court's First Amendment analysis does not permit Mr. Shoemaker's
2  conviction to stand for possessing morphed images, however, provides a sufficient
3  basis by itself for granting all of the relief requested in the pending petition.[6]

4  **CONCLUSION**

5       For the foregoing reasons, and for the reasons stated in Mr. Shoemaker's
6  prior Objections, Petition, Traverse, and supporting briefs, the Court should grant
7  Mr. Shoemaker's petition for writ of habeas corpus after hearing oral argument on
8  this matter.

9  Date:  June 10, 2011               Respectfully submitted,

10

11                                /s/ Michael Rubin
                              Counsel For Petitioner

12

13

14

15

16

17

18

19

20

21

22

23

24

25       [6] Even though Mr. Shoemaker was charged with misdemeanor rather than
felony violations of Penal Code §311.11 (possession) and §311.3 (duplication),
26  and even though he was acquitted of the additional counts alleging distribution
and possession of "obscene" materials, he is nonetheless subject to mandatory
27  registration for the rest of his life as a sex offender under Penal Code §290, and
is therefore subject to all of the resulting burdens and obligations that mandatory
28  registration imposes.  Reversal of the underlying conviction will also release Mr.
Shoemaker from this mandatory registration requirement.